<u>**NOT FOR PUBLICATION**</u>

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| DAVID WILSON, | : | |
| | : | Civil Action No. 11-7001 (NLH) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| JAMES HAAS, et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

Plaintiff <u>pro</u> <u>se</u>
David Wilson
Northern State Prison
Newark, NJ 07114

**HILLMAN**, District Judge

Plaintiff David Wilson, a prisoner confined at Northern State Prison in Newark, New Jersey, seeks to bring this action <u>in forma pauperis</u> pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. §1915(g), the Court will grant Plaintiff's application to proceed <u>in forma pauperis</u> pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Supplemental Complaint.[1]

_____

[1] Plaintiff has submitted several amended complaints. The Supplemental Complaint [9] is the most recent and is the operative pleading.

At this time, the Court must review the Supplemental Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

## I.   BACKGROUND

The following factual allegations are taken from Plaintiff's Supplemental Complaint [9] and are accepted as true for purposes of this review.

Plaintiff alleges that on November 15, 2010, he was confined at South Woods State Prison in Bridgeton, New Jersey.  Plaintiff alleges that on that night Defendant Correctional Officer Brown was playing cards in the control booth with another officer and Defendant Correctional Officer Castro was watching a football game on television in an inmate cell.  Plaintiff alleges that during this time he was attacked and bitten[2] by inmate Carlos Garcia.  Plaintiff alleges that Officer Castro called in a fight code and that Defendant Correctional Officers Zeller, Trullender, Vest-2 and Blizzard then arrived on the scene.

---

[2] Plaintiff alleges that as a result of this bite he needed to take a cocktail of medications for 30 days, for possible exposure to H.I.V., that caused "unbearable side effects."  He also alleges that he had to undergo psychological counseling.

2

Defendant Officers Zeller and Trullender ordered Plaintiff to get down on the ground.  Plaintiff alleges that he complied and that he was then handcuffed behind his back.  Plaintiff alleges that he was then beaten in the head, face, and body by Defendants Zeller, Trullender, and Vest-2.  Plaintiff alleges that Defendant Officers Blizzard and Castro stood 8-to-10 feet away and did not intervene.  Plaintiff alleges that Defendant Officer Brown watched from the control room and failed to intervene.  Plaintiff alleges that Defendant Officers Zeller, Trullender, and Vest-2 continued to beat him, leaving him in a puddle of his own blood, until other responding supervisors and officers arrived.

Plaintiff alleges that Defendants Zeller, Trullender, and Vest-2 then placed him in leg shackles and dragged him down a flight of stairs to a holding cell in another unit.  Plaintiff alleges that Defendant Nurse Sacco-McCord examined him and determined that he needed to be taken to an outside hospital for stitches to his head and to stop the bleeding from his head, because the prison doctor was not present at the time.  Plaintiff alleges that a Lt. Durham telephoned Defendant Administrator James Haas to inform him of Nurse Sacco-McCord's determination, but that Defendant Haas refused to permit Plaintiff to be transported to a hospital.  Plaintiff alleges that Defendant Haas ordered Lt. Durham to place Plaintiff in a locked cell in the

prison hospital, nude, with instructions that nobody was to go near Plaintiff until he[3] saw the prison Internal Affairs. Plaintiff alleges that Defendant Sacco-McCord then excluded Plaintiff's true injuries from her report and later misrepresented Plaintiff's injuries to the prison doctor.

Plaintiff alleges that an unidentified nurse and housing officer worked through the night, through the food port hold in the cell door, to monitor Plaintiff and to stop the bleeding.

Plaintiff alleges that Defendants Zeller, Trullender, Vest-2, Blizzard, and Sacco-McCord all met together and agreed to lie in their reports to cover up excessive force used by Defendants Zeller, Trullender, and Vest-2.  Plaintiff alleges that Defendants Castro and Brown also met and agreed to falsify their reports.  Plaintiff alleges that Defendants Castro, Zeller, and Blizzard falsely reported that Plaintiff was resisting. Plaintiff alleges that as a result of these false reports, he was charged with fighting.  Plaintiff alleges that he was placed in temporary close custody to try to force him to plead guilty to a disciplinary charge.  Plaintiff alleges that Defendants Castro and Brown refused to come to Plaintiff's disciplinary hearing. Plaintiff alleges that he was found guilty of a disciplinary charge of fighting, and that he lost 120 days of good-time

---

[3] It is not clear whether Plaintiff is referring to himself or to Administrator Haas.

credits.  Eventually, his 120 days of good time credits were restored by a new hearing officer.

Plaintiff asserts in general terms that South Woods State Prison policies permit wrongful use of excessive force and close custody and, by never taking corrective action, permit officers to cover up their wrongdoing.

In addition to the individuals identified above as defendants, Plaintiff names South Woods State Prison as a Defendant.  In the introductory paragraphs of the Supplemental Complaint, Plaintiff asserts claims in shotgun fashion for violation of 42 U.S.C. §§ 1983, 1985, 1986, and the New Jersey Civil Rights Act (N.J.Stat.Ann. 10:6-2),[4] for excessive use of

---

[4] The New Jersey Civil Rights Act (hereinafter "NJCRA") was modeled after 42 U.S.C. § 1983, and creates a private cause of action for violations of civil rights secured under the New Jersey Constitution. Slinger v. New Jersey, No. 07-5561, 2008 WL 4126181, *5-6 (D.N.J. September 4, 2008), rev'd on other grounds 366 Fed.Appx. 357 (3d Cir. 2010); Armstrong v. Sherman, No. 09-716, 2010 WL 2483911, *5 (D.N.J. June 4, 2010).  NJCRA provides, in pertinent part, a private cause of action to

> [a]ny person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law.

N.J.S.A. 10:6-2(c).  This district has repeatedly interpreted NJCRA analogously to § 1983.  See Chapman v. New Jersey, No. 08-4130, 2009 WL 2634888, *3 (D.N.J. August 25, 2009) ("Courts

force, denial of equal protection, procedural due process, substantive due process, and an "Issue of Confinement" all allegedly in violation of the Fourth,[5] Fifth,[6] Eighth, and Fourteenth Amendments to the U.S. Constitution.  In the text of the Supplemental Complaint he asserts claims for failure to protect and for denial of medical care.

Plaintiff seeks compensatory and punitive damages as well as injunctive relief.

_____

have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart"); Slinger, 2008 WL 4126181 at *5 (noting NJCRA's legislative history, this district utilized existing § 1983 jurisprudence as guidance for interpreting the statute); Armstrong, 2010 WL 2483911 at *5 ("[T]he New Jersey Civil Rights Act is a kind of analog to section 1983").  Therefore, the Court will consider the state and federal constitutional claims together.  See, e.g., Jumpp v. Power, No. 08-4268, 2009 WL 1704307, at *4 (D.N.J. June 18, 2009) (Eighth Amendment and New Jersey constitution provide "congruent relief in the deliberate indifference context"); Filgueras v. Newark Public Schools, 426 N.J.Super. 449, 45 A.3d 986, 997 (App.Div. 2012) (elements of due process claim under state law and § 1983 are the same).

[5] This Court construes the reference to the Fourth Amendment as an attempt to assert an "excessive force" claim under that Amendment.  However, the proper constitutional source for the right of a convicted prisoner to freedom from the excessive use of force by correctional officials is the Eighth Amendment.  See, e.g., Graham v. Conner, 490 U.S. 386, 394-95 (1989); Whitley v. Albers, 475 U.S. 312, 318-26 (1986); Anderson v. County of Salem, No. , 2010 WL 3081070, *3 (Aug. 5, 2010).  Accordingly, all claims under the Fourth Amendment will be dismissed with prejudice.

[6] Plaintiff fails to allege any facts suggesting a cause of action arising under the Fifth Amendment, which constrains the federal government.  Accordingly, this claim will be dismissed.

II.  <u>STANDARDS FOR A SUA SPONTE DISMISSAL</u>

This Court must dismiss, at the earliest practicable time, certain <u>in</u> <u>forma</u> <u>pauperis</u> and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  <u>See</u> 28 U.S.C. § 1915(e)(2) (<u>in</u> <u>forma</u> <u>pauperis</u> actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a <u>pro</u> <u>se</u> complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972); <u>United States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint must plead facts sufficient at least to "suggest" a basis for liability.  <u>Spruill v. Gillis</u>, 372 F.3d 218, 236 n.12 (3d Cir. 2004).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what

7

the ... claim is and the grounds upon which it rests.'"

Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted).

> While a complaint ... does not need detailed factual
> allegations, a plaintiff's obligation to provide the
> "grounds" of his "entitle[ment] to relief" requires
> more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action will
> not do, see Papasan v. Allain, 478 U.S. 265, 286, 106
> S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to
> dismiss, courts "are not bound to accept as true a
> legal conclusion couched as a factual allegation").
> Factual allegations must be enough to raise a right to
> relief above the speculative level ... .

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)

(citations omitted).

The Court of Appeals for the Third Circuit has applied the

Twombly pleading standard to civil rights complaints.

> Context matters in notice pleading.  ...  Put another
> way, in light of Twombly, Rule 8(a)(2) requires a
> "showing" rather than a blanket assertion of an
> entitlement to relief.  We caution that without some
> factual allegation in the complaint, a claimant cannot
> satisfy the requirement that he or she provide not only
> "fair notice," but also the "grounds" on which the
> claim rests.

Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008)

(citations omitted).

More recently, the Supreme Court has emphasized that, when

assessing the sufficiency of any civil complaint, a court must

distinguish factual contentions -- which allege behavior on the

part of the defendant that, if true, would satisfy one or more

elements of the claim asserted -- and "[t]hreadbare recitals of

8

the elements of a cause of action, supported by mere conclusory

statements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

> To survive a motion to dismiss, a complaint must
> contain sufficient factual matter, accepted as true, to
> state a claim to relief that is plausible on its face.
> A claim has facial plausibility when the plaintiff
> pleads factual content that allows the court to draw
> the reasonable inference that the defendant is liable
> for the misconduct alleged.  The plausibility standard
> is not akin to a probability requirement, but it asks
> for more than a sheer possibility that a defendant has
> acted unlawfully.  Where a complaint pleads facts that
> are merely consistent with a defendant's liability, it
> stops short of the line between possibility and
> plausibility of entitlement to relief.

Ashcroft, 556 U.S. at 678 (citations and quotation marks omitted)

(quoted in Bistrian v. Levi, 696 F.3d 352, 365 (3d Cir. 2012).

Taking this guidance into account, the Court of Appeals

instructs that the analysis, to determine whether a complaint

meets the pleading standard, unfolds in three steps.

> First, we outline the elements a plaintiff must plead
> to state a claim for relief.  Next, we peel away those
> allegations that are no more than conclusions and thus
> not entitled to the assumption of truth.  Finally, we
> look for well-pled factual allegations, assume their
> veracity, and then "determine whether they plausibly
> give rise to an entitlement to relief."  This last step
> is "a context-specific task that requires the reviewing
> court to draw on its judicial experience and common
> sense."

Bistrian, 696 F.3d at 365 (citations omitted).

Where a deficient complaint can be remedied by an amendment,

a district court may not dismiss the complaint with prejudice,

but must permit the amendment. Denton v. Hernandez, 504 U.S. 25,

34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108

9

(3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2));

Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal

pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg

County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).


### III.   SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C.

§ 1983 for certain violations of his constitutional rights.

Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must

allege, first, the violation of a right secured by the

Constitution or laws of the United States and, second, that the

alleged deprivation was committed or caused by a person acting

under color of state law.  West v. Atkins, 487 U.S. 42, 48

(1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir.

1994).


### IV.   ANALYSIS

### A.   Claims against South Woods State Prison

10

The Eleventh Amendment to the United States Constitution provides that, "The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecut6ed against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State."

As a general proposition, a suit by private parties seeking to impose a liability which must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state itself or by federal statute.  See, e.g., Edelman v. Jordan, 415 U.S. 651, 663 (1974).

New Jersey state prison facilities are entitled to immunity from suit in federal court under the Eleventh Amendment and, therefore, they are not "persons" within the meaning of § 1983. Grabow v. Southern State Correctional Facility, 726 F.Supp. 537, 538-39 (D.N.J. 1989).  Accordingly, all claims against South Woods State Prison will be dismissed without prejudice for lack of jurisdiction.


B.   Eighth Amendment Claims

The Eighth Amendment to the United States Constitution, applicable to the individual states through the Fourteenth Amendment, prohibits the states from inflicting "cruel and

unusual punishments" on those who have been convicted <u>and</u> sentenced. <u>Rhodes v. Chapman</u>, 452 U.S. 337, 344-46 (1981).[7]

An Eighth Amendment claim includes both an objective component, whether the deprivation of a basic human need is sufficiently serious, and a subjective component, whether the officials acted with a sufficiently culpable state of mind. <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991).  The objective component is contextual and responsive to "'contemporary standards of decency.'"  <u>Hudson v. McMillian</u>, 503 U.S. 1, 8 (1992).  The subjective component follows from the principle that "'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'"  <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994) (quoting <u>Wilson</u>, 501 U.S. at 297 (internal quotation marks, emphasis, and citations omitted)); <u>Rhodes v. Chapman</u>, 452 U.S. 337, 345 (1981).  What is necessary to establish an unnecessary and wanton infliction of pain varies also according to the nature of the alleged constitutional violation.  <u>Hudson v. McMillian</u>, 503 U.S. at 5.

---

[7] Pre-trial detainees and convicted but unsentenced prisoners retain liberty interests firmly grounded in the Due Process Clause of the Fourteenth Amendment.  <u>See</u> <u>Hubbard v. Taylor</u>, 399 F.3d 150  (3d Cir. 2005); <u>Fuentes v. Wagner</u>, 206 F.3d 335, 341 (3d Cir. 2000).  Analysis of whether such a detainee or unsentenced prisoner has been deprived of liberty without due process is governed by the standards set out by the Supreme Court in <u>Bell v. Wolfish</u>, 441 U.S. 520 (1979).  <u>Hubbard</u>, 399 F.3d at 157-60, 164-67; <u>Fuentes</u>, 206 F.3d at 341-42.

1.   Failure to Protect

Here, Plaintiff alleges that on November 15, 2010, Defendant Correctional Officers Brown and Castro were playing cards and watching television, thus neglecting their duty to secure the housing unit.  As a result, Plaintiff alleges that he was attacked by another prisoner.

Under the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, including adequate personal safety.  Farmer v. Brennan, 511 U.S. 825, 832 (1994); Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992).  Accordingly, prison officials must take reasonable measures "to protect prisoners from violence at the hands of other prisoners." Farmer, 511 U.S. at 833 (1994) (internal quotations omitted). "Being violently assaulted in prison is simply 'not part of the penalty that criminal offenders pay for their offenses against society.'"  Id. at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).

To successfully state a failure-to-protect claim for violation of the Eighth Amendment, as always, an inmate must satisfy both the objective and subjective components of such a claim.  The inmate must allege a deprivation which was "sufficiently serious," and that in their actions or omissions, prison officials exhibited "deliberate indifference" to the

13

inmate's health or safety.  See Farmer, 511 U.S. at 834; Wilson v. Seiter, 501 U.S. 294, 305 (1991); Nami v. Fauver, 82 F.3d 63, 67 (3d Cir. 1996).

In the context of a failure-to-protect claim, the inmate must show that he is "incarcerated under conditions posing a substantial risk of harm," Farmer, 511 U.S. at 833, and that prison officials knew of and disregarded the excessive risk to inmate safety, Id. at 837.  "A pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror." Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir. 1985).  "Whether ... prison official[s] had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a fact finder may conclude that ... prison official[s] knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842. Deliberate indifference is more than a mere lack of ordinary due care, however; it is a state of mind equivalent to a reckless disregard of a known risk of harm. Farmer, 511 U.S. at 834.

Applying Farmer to a failure-to-protect claim, the first question is whether an inmate has alleged facts showing that inmates, or the individual plaintiff in particular, faced a substantial risk of assault.  The second question is whether an

14

inmate has alleged facts from which it could be inferred that defendants were aware of and disregarded that risk.  An inmate can meet this pleading burden by alleging facts which suggest that defendants were informed of a specific risk of harm to himself or other inmates, Nami, 82 F.3d at 67-68; Young, 960 F.2d at 362, or that "a substantial risk of inmate attacks was longstanding, pervasive, well-documented" or otherwise obvious to them.  Farmer, 511 U.S. at 842; accord Hamilton v. Leavy, 117 F.3d 742, 747-48 (3d Cir. 1997); Ingalls v. Florio, 968 F.Supp. 193, 199-200 (D.N.J. 1997).  A negligent failure to prevent an attack is insufficient to establish a violation of the Eighth Amendment.  Davidson v. Cannon, 474 U.S. 344, 345-48 (1986) (finding that prison officials' negligent failure to heed prisoner's notification of threats from another inmate, followed by an assault, is not a deprivation of constitutional rights); see also Schwartz v. County of Montgomery, 843 F.Supp. 962 (E.D. Pa.), aff'd, 37 F.3d 1488 (3d Cir. 1994) (stating that corrections officers' failure to observe institutional policies regarding the supervision of dangerous inmates constitutes negligence, which cannot support a § 1983 action for violation of the Eighth or Fourteenth Amendments).

Here, Plaintiff has alleged no facts suggesting either a specific threat or a longstanding history of inmate violence. Instead, the factual allegations suggest nothing more than a

single instance of inmate violent, allegedly possible through officer negligence, not actionable under the Eighth Amendment. Accordingly, the "failure to protect" claim will be dismissed without prejudice.

    2.  <u>Excessive Force</u>

Plaintiff alleges that Officers Zeller, Trullender, and Vest-2 beat him in the head, face, and body, while he was on the ground handcuffed behind his back, causing injuries that bled extensively.  Plaintiff alleges that Officers Blizzard, Castro, and Brown watched and failed to intervene.

Where the Eighth Amendment claim is one of excessive use of force, the core inquiry as to the subjective component is that set out in <u>Whitley v. Albers</u>, 475 U.S. 312, 320-21 (1986)(citation omitted):  "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'"  <u>Quoted in Hudson</u>, 503 U.S. at 6.  "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated."  <u>Id.</u> at 9.  In such cases, a prisoner may prevail on an Eighth Amendment claim even in the absence of a serious injury, the objective component, so long as there is some pain or injury and something more than <u>de minimis</u> force is used.  <u>Id.</u> at 9-10 (finding that blows which caused

16

bruises, swelling, loosened teeth, and a cracked dental plate were not _de minimis_ for Eighth Amendment purposes).

To determine whether force was used in "good faith" or "maliciously and sadistically," courts have identified several factors, including:

> (1) "the need of the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of injury inflicted"; (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them"; and (5) "any efforts made to temper the severity of a forceful response."

_Brooks v. Kyler_, 204 F.3d 102, 106 (3d Cir. 2000) (quoting _Whitley v. Albers_, 475 U.S. at 321).  Thus, not all use of force is "excessive," the level of a constitutional violation.

In addition, "a corrections officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so. Furthermore, ... a corrections officer can not escape liability by relying upon his inferior or non-supervisory rank vis-a-vis the other officers."  _Smith v. Mensinger_, 293 F.3d 641, 640 (3d Cir. 2002).

Here, the allegations of a severe beating inflicted while Plaintiff was subdued are sufficient to permit the excessive force claim to proceed as against Officers, Zeller, Trullender, Vest-2, Blizzard, Castro, and Brown.

17

3.   <u>Medical Care</u>

Plaintiff alleges that, after he was beaten, Officers Zeller, Trullender, and Vest-2 dragged him to a holding cell in another unit.  At that time, Defendant Nurse Sacco-McCord examined Plaintiff and determined that he needed to be taken to a hospital for stitches.  Plaintiff alleges that Lt. Durham, not a defendant here, telephoned Administrator James Haas with the nurse's determination, in response to which Administrator Haas refused to permit the transfer and instead instructed that Plaintiff be stripped and held without treatment in a locked hospital cell.  Plaintiff alleges that Nurse Sacco-McCord then misrepresented Plaintiff's true injuries in her report and in the information she provided to the prison doctor.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 103-04 (1976).  In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need.  <u>Id.</u> at 106.

To satisfy the first prong of the <u>Estelle</u> inquiry, the inmate must demonstrate that his medical needs are serious.

18

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" Hudson v. McMillian, 503 U.S. 1, 9 (1992).  Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize the necessity for doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss.  Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need.  "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm.  Farmer v. Brennan, 511 U.S. 825, 837-38 (1994).  Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference.  Andrews v. Camden County, 95 F.Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F.Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984).  Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).

19

"Where prison authorities deny reasonable requests for medical treatment, however, and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,' deliberate indifference is manifest.  Similarly, where 'knowledge of the need for medical care [is accompanied by the] ... intentional refusal to provide that care,' the deliberate indifference standard has been met.  ...  Finally, deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment."  Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d at 346 (citations omitted). "Short of absolute denial, 'if necessary medical treatment [i]s ... delayed for non-medical reasons, a case of deliberate indifference has been made out."  Id. (citations omitted).

Liability of a remote supervisory official also is dependent upon meeting the standards described above.  Compare Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993) (summary judgment properly granted to prison warden and state commissioner of corrections, the only allegation against whom was that they failed to respond to letters from prisoner complaining of prison doctor's treatment decisions) with Sprull v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) (a non-physician supervisor may be liable

under § 1983 if he knew or had reason to know of inadequate
medical care).

Plaintiff's allegations of substantial blood loss and need
for stitches are sufficient to suggest a serious medical need.
With respect to Officers Zeller, Trullender, and Vest-2, the
allegations that they took Plaintiff to the nurse belie any
suggestion of "deliberate indifference."  Accordingly, there is
no basis for a medical-care claim against them.  The allegations
against Nurse Sacco-McCord, however, that she knew Plaintiff
needed treatment, that she complied with an instruction to
withhold treatment, and that she misrepresented Plaintiff's
injuries in reporting to a physician, are sufficient to suggest
"deliberate indifference."  Similarly, the allegations that
Administrator Haas refused to permit Plaintiff to be transported
to a hospital or to be treated within the prison, after being
advised that a nurse had determined a need for treatment, are
sufficient to suggest "deliberate indifference."  Accordingly,
the claim for denial of medical care may proceed as against Nurse
Sacco-McCord and Administrator Haas.

C.   Due Process Claims

Plaintiff contends that defendants Zeller, Trullender, Vest-
2, Blizzard, Sacco-McCord, Castro, and Brown created false
reports about the events of November 15, 2010, as a result of

21

which Plaintiff alleges that he was charged with the disciplinary
infraction of fighting and resisting, that he was held in
temporary close custody in an effort to persuade him to plead
guilty to these charges, that he was found guilty of the
disciplinary charge and lost 120 days good conduct time, and that
the good conduct time was later restored.  The Court construes
these allegations as a claim that these defendants deprived
Plaintiff of a liberty interest without due process.

A liberty interest protected by the Due Process Clause[8] may
arise from either of two sources:  the Due Process Clause itself
or State law.  See Hewitt v. Helms, 459 U.S. 460, 466 (1983);
Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir.
1999).  With respect to convicted and sentenced prisoners, "[a]s
long as the conditions or degree of confinement to which the
prisoner is subjected is within the sentence imposed upon him and
is not otherwise violative of the Constitution, the Due Process
Clause does not in itself subject an inmate's treatment by prison
authorities to judicial oversight." Montanye v. Haymes, 427 U.S.
236, 242 (1976), quoted in Hewitt, 459 U.S. at 468 and Sandin v.
Conner, 515 U.S. 472, 480 (1995).  Cf. Washington v. Harper, 494
U.S. 210, 221-22 (1990)(prisoner has liberty interest under the
Due Process Clause in freedom from involuntary administration of

---

[8] The Due Process Clause of the Fourteenth Amendment
provides that no State may "deprive any person of life, liberty,
or property, without due process of law."

psychotropic drugs); Vitek v. Jones, 445 U.S. 480, 493-94
(1980)(prisoner has liberty interest under the Due Process Clause
in freedom from involuntary transfer to state mental hospital
coupled with mandatory treatment for mental illness, a punishment
carrying "stigmatizing consequences" and "qualitatively
different" from punishment characteristically suffered by one
convicted of a crime).

     "Discipline by prison officials in response to a wide range
of misconduct falls within the expected parameters of the
sentence imposed by a court of law."  Sandin, 515 U.S. at 485
(upholding prisoner's sentence of 30 days' disciplinary
segregation following a hearing at which he was not permitted to
produce witnesses).  See also Asquith, 186 F.3d at 410-11 (no
liberty interest under the Due Process Clause in remaining in
halfway house).

     States, however, may confer on prisoners liberty interests
that are protected by the Due Process Clause.  "But these
interests will be generally limited to freedom from restraint
which, while not exceeding the sentence in such an unexpected
manner as to give rise to protection by the Due Process Clause of
its own force, nonetheless imposes atypical and significant
hardship on the inmate in relation to the ordinary incidents of
prison life."  Sandin, 515 U.S. at 484 (finding that disciplinary
segregation conditions which effectively mirrored those of

administrative segregation and protective custody were not
"atypical and significant hardships" in which a state conceivably
might create liberty interest).  See also Asquith, 186 F.3d at
411-12 (return to prison from halfway house did not impose
"atypical and significant hardship" on prisoner and, thus, did
not deprive him of protected liberty interest).  In Griffin v.
Vaughn, 112 F.3d 703, 708-09 (3d Cir. 1997), the Court of Appeals
for the Third Circuit held that a 15-month confinement in
administrative custody did not impose "atypical and significant
hardship," even in the face of state regulation requiring release
to the general population after 20 days in the absence of a
misconduct charge.  The Court of Appeals did note, however, that
if an inmate is committed to undesirable conditions for an
atypical period of time in violation of state law, that is a
factor to be considered in determining whether the prisoner has
been subjected to "atypical and significant hardship" triggering
due process protection.  Id.

As Plaintiff admits that the allegedly false disciplinary
charges have not affected the duration of his sentence, and as he
does not allege that the circumstances of his confinement in
temporary close custody caused him any atypical and significant
hardship,[9] he has failed to assert that defendants deprived him

---

[9] In addition, Plaintiff has failed to allege the identify
of the person(s) who placed him in temporary close custody.  This
defect precludes this Court finding that Plaintiff has stated a

of a protected liberty interest at all.  See Wilson v. Wellman, 238 F.3d 426, 2000 WL 1829265 (6th Cir. Dec. 6, 2000); Washington v. Madding, 189 F.3d 476, 1999 WL 511125 (9th Cir. July 15, 1999).

Moreover, had the filing of false disciplinary charges somehow implicated a protected liberty interest, Plaintiff also would have to demonstrate "that the procedures afforded him at the disciplinary hearing fell short of the requirements enunciated in Wolff v. McDonnell[, 418 U.S. 539 (1974)]." Jackson v. Johnson, 15 F.Supp.2d 341, 351 (S.D.N.Y. 1998).  See Sandin, 515 U.S. at 487.  Here, Plaintiff makes no such allegation of defective procedures.  To the contrary, he states that the hearing ultimately terminated in his favor. Accordingly, it does not appear that the defects in the false-charges claim could be cured by amendment, and the claim will be dismissed with prejudice.  The due process claim regarding his detention in temporary close custody will be dismissed without prejudice.


D.   Equal Protection Claims

Plaintiff alleges in conclusory terms that, by the events described in the Supplemental Complaint, the defendants deprived

---

claim against any of the named defendants.

him of his right to equal protection and violated 42 U.S.C.
§§ 1985 and 1986.

    1.  Equal Protection Clause

The Equal Protection Clause of the Fourteenth Amendment
commands that no State shall "deny to any person within its
jurisdiction the equal protection of the laws," which is
essentially a direction that all persons similarly situated
should be treated alike. City of Cleburne, Texas v. Cleburne
Living Center, 473 U.S. 432, 439 (1985) (citing Plyler v. Doe,
457 U.S. 202, 216 (1982); Artway v. Attorney General of New
Jersey, 81 F.3d 1235, 1267 (3d Cir. 1996).  Despite its sweeping
language, though, "[t]he Equal Protection Clause does not forbid
classifications.  It simply keeps governmental decisionmakers
from treating differently persons who are in all relevant
respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992).  To
prevail under the Equal Protection Clause, Plaintiff must
establish that the defendants acted with a discriminatory purpose
and that their action had a discriminatory effect on Plaintiff.
See, e.g., McCleskey v. Kemp, 481 U.S. 279, 292 (1987).

Plaintiff has failed to allege any facts suggesting that he
was treated differently from any other similarly-situated
prisoner or that the actions of any of the defendants were

26

motivated by a discriminatory purpose.  Accordingly, the equal protection claims will be dismissed without prejudice.

    2.  <u>Section 1985</u>

Title 42 U.S.C. section 1985 consists of three subsections dealing with various conspiracies to interfere with civil rights. Subsection (1) provides a remedy, generally, if two or more persons conspire to prevent any person from accepting or holding any office, trust, or place of confidence under the United States or otherwise to prevent a federal officer from performing his duties; subsection (2) provides a remedy, generally, if two or more persons conspire to deter, by force, intimidation, or threat, any party, witness, or juror in any court of the United States;  subsection (3) provides a remedy, generally, if two or more persons conspire or go on the premises of another, "for the purpose of depriving, either directly or indirectly, any person ... of the equal protection of the laws, or of equal privileges and immunities under the laws... ."  Only subsection (3) is arguably implicated by the facts asserted here.

> To state a claim under § 1985(3), one must allege:
>
> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

<u>United Broth. of Carpenters and Joiners of America, Local 610,</u>

<u>AFL-CIO v. Scott</u>, 463 U.S. 825, 829 (1983).  With respect to the

second element, the conspiracy must be motivated by "some racial,

or perhaps otherwise class-based, invidiously discriminatory

animus."  <u>Griffin v. Breckenridge</u>, 403 U.S. 88, 102 (1971).

    Thus, in order to state a claim under § 1985, there must be

factual allegations suggesting some racial or otherwise

invidiously discriminatory animus behind the alleged

conspirators' actions.  See <u>Kush v. Rutledge</u>, 460 U.S. 719, 724-

26 (1983).  As this Court has previously noted, no such

allegations of discriminatory intent are set forth in the

Supplemental Complaint.

    Nor are there allegations sufficient to suggest

"conspiracy."  The Supreme Court has demonstrated the application

of <u>Twombly</u>'s general pleading standards to a conspiracy claim.

        In applying these general standards to a
    [conspiracy] claim, we hold that stating such a claim
    requires a complaint with enough factual matter (taken
    as true) to suggest that an agreement was made.  ...
    It makes sense to say, therefore, that an allegation of
    parallel conduct and a bare assertion of conspiracy
    will not suffice.  Without more, parallel conduct does
    not suggest conspiracy, and a conclusory allegation of
    agreement at some unidentified point does not supply
    facts adequate to show illegality.  Hence, when
    allegations of parallel conduct are set out in order to
    make a [conspiracy] claim, they must be placed in a
    context that raises a suggestion of a preceding
    agreement, not merely parallel conduct that could just
    as well be independent action.

        The need at the pleading stage for allegations
    plausibly suggesting (not merely consistent with)

28

>        agreement reflects the threshold requirement of Rule
>        8(a)(2) that the "plain statement" possess enough heft
>        to "sho[w] that the pleader is entitled to relief."  A
>        statement of parallel conduct, even conduct consciously
>        undertaken, needs some setting suggesting the agreement
>        necessary to make out a [conspiracy] claim ... .

Twombly, 550 U.S. at 556-57 (citations and footnotes omitted).

Here, at most, Plaintiff has pleaded only parallel conduct

accompanied by a conclusory allegation of agreement.  He has

failed, however, to allege facts demonstrating actual

"agreement."  For all the foregoing reasons, Plaintiff has failed

to state a claim for violation of § 1985(3).


    3.  Section 1986

        Section 1986 provides a cause of action for neglect to

prevent a violation of 42 U.S.C. § 1985.  Thus, a viable § 1986

claim is dependent upon a viable § 1985 claim.  See, e.g., Koorn

v. Lacey Twp., 78 Fed. Appx. 199, 208 (3d Cir. 2003) (citing Mian

v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1088 (2d

Cir. 1993));  Grimes v. Smith, 776 F.2d 1359, 1363 n.4 (7th Cir.

1985).  As Plaintiff fails to assert a viable claim for violation

of § 1985, the claim under § 1986 will be dismissed also.


            V.  CONCLUSION

        For the reasons set forth above, Plaintiff's claims for use

of excessive force and for denial of medical care will be

permitted to proceed as against certain defendants.  All other claims will be dismissed.

However, because it is conceivable that Plaintiff may be able to supplement his pleading with facts sufficient to overcome the deficiencies of his Supplemental Complaint with respect to claims dismissed <u>without</u> prejudice, other than those asserted against South Woods State Prison, the Court will grant Plaintiff leave to file a third amended complaint within 30 days after entry of the accompanying Order.[10]

An appropriate order follows.


At Camden, New Jersey           s/ Noel L. Hillman
                                Noel L. Hillman
                                United States District Judge

Dated: December 28, 2012

---

[10] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, <u>Federal Practice and Procedure</u> § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  <u>Id.</u>  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  <u>Id.</u>