UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
_____
                                :
DAVID WILSON,                   :
                                :
          Plaintiff,            :    Civ. No. 11-7001 (NLH)
                                :
     v.                         :    OPINION
                                :
JAMES HAAS, et al.,             :
                                :
          Defendants.           :
_____:
```

APPEARANCES:
Charles Harry Landesman
Law, Froelich & Landesman
360 Kearny Ave.
Kearny, NJ 07032
     Counsel for Plaintiff

Randy Miller
State of New Jersey Department of Law & Public Safety
25 Market St.
P.O. Box 112
Trenton, NJ 08625
     Counsel for Defendants


HILLMAN, District Judge

     This matter comes before the Court by way of a motion (ECF
No. 53) by Defendants seeking summary judgment pursuant to
Federal Rule of Civil Procedure 56.  The Court has considered
the parties' submissions and decides this matter pursuant to
Federal Rule of Civil Procedure 78.

     For the reasons that follow, Defendants' motion for summary
judgment will be GRANTED in part and DENIED in part.

I.   BACKGROUND

At all times relevant to this action, Plaintiff was an inmate at South Woods State Prison in Bridgeton, New Jersey. Plaintiff's claims arise from events that occurred on November 15, 2010.  Specifically, on that date Plaintiff had an altercation with another inmate at the facility, Garcia, in the hall just outside — and partially in — inmate Garcia's cell.  A Code 33 was called and numerous officers responded to the scene. (Defs.' Statement of Material facts [ECF No. 53-3] (hereinafter "Defs.' SOMF"), ¶ 3); see also (Pl.'s Responsive Statement of Material Facts [ECF No. 58] (hereinafter, "Pl.'s Resp. SOMF"), ¶ 1).

When the officers arrived, the inmates were still fighting on the floor and Plaintiff's hand was in Garcia's mouth. (Defs.' SOMF, ¶ 4) (Pl.'s Resp. SOMF, ¶ 1, 2).  The officers told the inmates to stop fighting. (Defs.' SOMF, ¶ 7) (Pl.'s Resp. RSOMF, ¶ 3).  The officers then began to pull the inmates apart. (Defs.' SOMF, ¶ 5) (Pl.'s Resp. SOMF, ¶ 1).  At that time, Plaintiff believed that the officers would use some force against him to end the fight. Id.

Once separated, the officers placed restraints on Garcia and Plaintiff. (Defs.' SOMF, ¶ 10) (Pl.'s Resp. SOMF, ¶ 5).  The parties dispute what happened after the inmates were restrained. Defendants contend that Plaintiff continued to resist the

officers and continued to attempt to assault Garcia. (Defs.'
SOMF, ¶ 9, 11).  Plaintiff asserts that he complied with the
officers' orders to stop and denies resisting the restraints or
continuing the assault. (Pl.'s Resp. SOMF, ¶ 4, 6).

Plaintiff claims that during the fight, Garcia assaulted
him with a padlock and bit him. (Defs.' SOMF, ¶ 13, 14) (Pl.'s
Resp. SOMF, ¶ 7).  After Plaintiff was restrained, he was taken
to the hospital area of the prison for treatment of his
injuries.  He was given an "HIV cocktail" — because he had been
bitten — and he continued to receive this HIV medication for 28
or 29 days. (Defs.' SOMF, ¶ 16-18) (Pl.'s Resp. SOMF, ¶ 7).
Upon his initial arrival to the hospital area of the prison, he
was examined by Nurse Sacco-McCord who cleaned his wounds.
(Defs.' SOMF, ¶ 19, 20) (Pl.'s Resp. SOMF, ¶ 7).  Another
unknown female nurse tended to Plaintiff's wounds during the
night to control the bleeding. (Defs.' SOMF, ¶ 21) (Pl.'s Resp.
SOMF, ¶ 7).

The following morning, the same unknown nurse examined
Plaintiff and determined that his wounds were closing. (Defs.'
SOMF, ¶ 22) (Pl.'s Resp. SOMF, ¶ 7).  Plaintiff was given
treatment for his wounds, including a tetanus shot, antibiotics,
cleaning of the wound, and a two day stay in the infirmary
during which he was under observation (Defs.' SOMF, ¶ 23) (Pl.'s
Resp. SOMF, ¶ 7).

After two days of observation by medical staff, they determined that Plaintiff's condition permitted removal, and he was removed from the infirmary. (Defs.' SOMF, ¶ 25) (Pl.'s Resp. SOMF, ¶ 7).

Plaintiff then filed this action pursuant to 42 U.S.C. § 1983 alleging that Defendants violated his constitutional rights by: (1) using excessive force against him; (2) failing to intervene while the excessive force was being used against him; and (3) failing to provide adequate medical care.

Specifically, Plaintiff asserts that Defendant Officers Zeller, Trullender, and Vest-2 continued to beat him after he was restrained and no longer resisting or fighting.  Plaintiff also contends that Defendant Officer Brown watched from the control room and failed to intervene, and that Defendant Officers Castro and Blizzard were approximately eight to ten feet away from Plaintiff at the time he was restrained and beaten, but they failed to intervene.  Finally, Plaintiff asserts that he needed stitches, but that Defendant Haas refused to allow him to go to an outside hospital to receive them and directed medical personnel to effectively deny Plaintiff treatment.[1]

---

[1] Plaintiff's claims against Defendant Nurse Sacco-McCord were dismissed by stipulation of the parties on December 9, 2013. (ECF No. 34).

The parties engaged in discovery and Defendants now move for summary judgment.

## II.   DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

In the present motion, Defendants seeks the entry of summary judgment in their favor on all of Plaintiff's claims. Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing FED. R. CIV. P. 56).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id.  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his

5

favor.'" <u>Marino v. Indus. Crating Co.</u>, 358 F.3d 241, 247 (3d Cir. 2004) (<u>citing</u> <u>Anderson</u>, 477 U.S. at 255).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. <u>Celotex</u>, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." (citation omitted); <u>see also</u> <u>Singletary v. Pa. Dept. of Corr.</u>, 266 F.3d 186, 192 n. 2 (3d Cir. 2001) ("Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by "showing" — that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof.") (<u>citing</u> <u>Celotex</u>, 477 U.S. at 325).

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. <u>Celotex</u>, 477 U.S. at 324. A "party opposing summary judgment may not rest upon the mere allegations or denials of the ... pleading[s.]"

Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001)
(internal quotations omitted).  For "the non-moving party[ ] to
prevail, [that party] must 'make a showing sufficient to
establish the existence of [every] element essential to that
party's case, and on which that party will bear the burden of
proof at trial.'" Cooper v. Sniezek, 418 F. App'x 56, 58 (3d
Cir. 2011) (citing Celotex, 477 U.S. at 322).  Thus, to
withstand a properly supported motion for summary judgment, the
nonmoving party must identify specific facts and affirmative
evidence that contradict those offered by the moving party.
Anderson, 477 U.S. at 256-57.

    B. 42 U.S.C. § 1983

    A plaintiff may have a cause of action under 42 U.S.C. §
1983 for certain violations of his constitutional rights.
Section 1983 provides, in pertinent part:

>     Every person who, under color of any statute,
>     ordinance, regulation, custom, or usage, of any State
>     ... subjects, or causes to be subjected, any citizen
>     of the United States or other person within the
>     jurisdiction thereof to the deprivation of any rights,
>     privileges, or immunities secured by the Constitution
>     and laws, shall be liable to the party injured in an
>     action at law, suit in equity, or other proper
>     proceeding for redress[.]"

42 U.S.C. § 1983.

    "To state a claim under 42 U.S.C. § 1983, a plaintiff must
allege a person acting under color of state law engaged in
conduct that violated a right protected by the Constitution or

laws of the United States." Morrow v. Balaski, 719 F.3d 160,
165-66 (3d Cir. 2013) (citing Nicini v. Morra, 212 F.3d 798, 806
(3d Cir. 2000)).  The Court's "'first step in evaluating a
section 1983 claim is to 'identify the exact contours of the
underlying right said to have been violated' and to [then]
determine 'whether the plaintiff has alleged a deprivation of a
constitutional right at all.'" Morrow, 719 F.3d at 166 (quoting
Nicini, 212 F.3d at 806.); see also West v. Atkins, 487 U.S. 42,
48 (1988).

III. ANALYSIS

A. EXCESSIVE FORCE CLAIM

1. THERE IS A GENUINE DISPUTE OF MATERIAL FACT

The Eighth Amendment prohibits cruel and unusual
punishment, which includes the unnecessary and wanton infliction
of pain by prison officials. U.S. Const. amend. VIII; see also
Rhodes v. Chapman, 452 U.S. 337, 345-46, 101 S.Ct. 2392, 69
L.Ed.2d 59 (1981); Whitley v. Albers, 475 U.S. 312, 319, 106
S.Ct. 1078, 89 L.Ed.2d 251 (1986).  The Eighth Amendment both
restrains prison officials from applying excessive force against
inmates, see Hudson v. McMillian, 503 U.S. 1, 5, 112 S.Ct. 995,
117 L.Ed.2d 156 (1992), and it imposes affirmative duties on
prison officials to provide humane conditions of confinement,
see Farmer v. Brennan, 511 U.S. 825, 832-33, 114 S.Ct. 1970, 128
L.Ed.2d 811 (1994).  Here, Plaintiff alleges that Officers

8

Zeller, Trullender, and Vest-2 violated the Eight Amendment by applying excessive force when they beat him in the head, face, and body, while he was on the ground handcuffed behind his back.

Where the Eighth Amendment claim is one of excessive use of force, the core inquiry as to the subjective component is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 319.  "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." Hudson, 503 U.S. at 9.

In such cases, a prisoner may prevail on an Eighth Amendment claim even in the absence of a serious injury, the objective component, so long as there is some pain or injury and something more than de minimis force is used. Id. at 9-10 (finding that blows which caused bruises, swelling, loosened teeth, and a cracked dental plate were not de minimis for Eighth Amendment purposes).

To determine whether force was used in "good faith" or "maliciously and sadistically," courts have identified several factors, including: (1) "the need of the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of injury inflicted"; (4) "the extent of the threat to the safety of staff and inmates, as

reasonably perceived by responsible officials on the basis of the facts known to them"; and (5) "any efforts made to temper the severity of a forceful response." Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting Whitley, 475 U.S. at 321).

Thus, not all use of force is "excessive" to the level of a constitutional violation.  Deference is given to prison officials' adoption of policies to restore order and discipline. Bell v. Wolfish, 441 U.S. 520, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

In this case, it is clear that officers responded to an inmate fight and that some force was used, and even anticipated by Plaintiff, in breaking up that fight.  The parties also agree that Plaintiff suffered some injury as a result of the force used by Defendants.[2]

However, a genuine dispute of fact exists as to whether the officers continued to beat Plaintiff after the fight had ended and Plaintiff had been restrained and subdued.  Plaintiff testified that he complied with the officers' orders, and that he was lying face-down on the ground with his hands shackled

_____

[2] Though the extent of the injuries Plaintiff attributes to the excessive force is not entirely clear, Defendants concede that Plaintiff suffered at least "minor bruising." (Defs.' Mot. Summ. J. 14-15, ECF No. 53-4).  Pursuant to Hudson, injuries of this type may be sufficient to show harm for purposes of the cruel and unusual punishments clause. Hudson, 503 U.S. 1.

behind his back when he was beaten.[3]  Defendants assert that

Plaintiff continued to resist and was attempting to continue his

assault on inmate Garcia at this point.  At the summary judgment

stage, however, the Court must accept Plaintiff's version of the

facts.[4]

Because Plaintiff's excessive force claim turns on which of

two conflicting stories best captures what happened, summary

judgment is not permitted in Defendants' favor. See Saucier v.

---

[3] Plaintiff indicates that he complied with the officers' order
in his affidavit in opposition to Defendants' motion for summary
judgment. (Pl.'s Aff. in Opp'n ¶ 4, ECF No. 55).  Defendants
point out that the affidavit is unsigned and they ask the Court
to disregard it because it is, effectively, not a sworn
statement. (Defs.' Reply 6-7, ECF No. 59).  Plaintiff thereafter
submitted a copy of the affidavit which is properly executed by
Plaintiff. (ECF No. 60).  Accordingly, Defendants' challenge to
the affidavit is moot in this respect.

[4] Defendants argue that Plaintiff's assertion that he complied
with officers' direction to stop fighting is inconsistent with
his previous testimony.  Specifically, Defendants point out that
Plaintiff previously testified that he was on the ground when
officers arrived on the scene, but that Plaintiff states in his
affidavit that he obeyed an order to get down on the ground.
(Defs.' Reply 7, ECF No. 54).  Defendants urge the Court to
disregard these allegations under the "sham affidavit doctrine."
Under this doctrine, a court can disregard a witness's affidavit
when it is inconsistent with prior deposition testimony. Jiminez
v. All Am. Rathskeller, 503 F. 3d 247, 255 (3d Cir. 2007).
However, a review of the deposition transcript provided by
Defendants shows that Plaintiff's previous testimony is not
inconsistent with his allegation that he complied with orders to
get down and stop fighting.  Throughout the deposition,
Plaintiff repeatedly stated that he obeyed commands to "get
down" and "stop." See, e.g., (Pl. Dep. 9:9-10, June 6, 2014,
Defs.' Ex. B at 24, ECF No. 53-2); (Pl. Dep. 27:13-15, Defs.'
Ex. B at 29).  Thus, the "sham affidavit doctrine" is
inapplicable in this instance.

<u>Katz</u>, 533 U.S. 194, 216, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (Ginsburg, concurring) ("[T]hat is as it should be.  When a plaintiff proffers evidence that the official subdued her with a chokehold even though she complied at all times with his orders, while the official proffers evidence that he used only stern words, a trial must be had.").

In this case, the factual dispute goes directly to the amount of force used and the context in which it was used. Viewing the evidence provided to the Court in the light most favorable to Plaintiff, as this Court must, a reasonable factfinder could conclude, based on the fact that Plaintiff was subdued and restrained, that Defendants applied force unnecessarily and wantonly to inflict pain.

Because accounts of this critical event are controverted, summary judgment is improper. <u>See</u> <u>Brooks</u> v, 204 F.3d at 106 (<u>quoting</u> <u>Whitley</u>, 475 U.S. at 322, 106 S.Ct. 1078) ("Summary judgment in favor of a defendant is not appropriate 'if it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain.'"); <u>see also</u> <u>Giles v. Kearney</u>, 571 F.3d 318, 327 (3d Cir. 2009) (finding summary judgment inappropriate on a prisoner's claim of excessive force where there was a genuine dispute of fact as to the necessity for the force, and a reasonable trier of fact could have concluded,

based on the prisoner's testimony that he had been struck by prison guards even after he had ceased resisting, that the force used was excessive).

Accordingly, the Court will deny summary judgment as to Plaintiff's excessive force claim.

2. <u>DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY</u>

Government officials are immune from suit in their individual capacities unless, "taken in the light most favorable to the party asserting the injury, ... the facts alleged show the officer's conduct violated a constitutional right" and "the right was clearly established" at the time of the objectionable conduct. <u>Saucier</u>, 533 U.S. at 201.  For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." <u>Id.</u> at 202 (<u>quoting</u> <u>Anderson v. Creighton</u>, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).  "If officers of reasonable competence could disagree on th[e] issue, immunity should be recognized." <u>Malley v. Briggs</u>, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

The Supreme Court has since held that the sequence of the two-part <u>Saucier</u> analysis is no longer mandatory and trial courts are now permitted to use discretion as to which prong of

the analysis to apply first. <u>See</u> <u>Pearson v. Callahan</u>, 555 U.S. 223, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009).

Qualified immunity is a complete immunity from suit, not just a defense to liability, and is considered at the earliest possible stage of proceedings, apart from the analysis of the underlying claim itself. <u>Saucier</u>, 533 U.S. at 194, 121 S.Ct. 2151. The issue of qualified immunity is generally a question of law, although a genuine issue of material fact will preclude summary judgment on qualified immunity. <u>See</u> <u>Giles</u>, 571 F.3d at 326 (citations omitted); <u>see also</u> <u>Curley v. Klem</u>, 499 F.3d 199, 208 (3d Cir. 2007) (citations omitted) (finding that where factual issues are in dispute, Third Circuit precedent makes clear that such disputes must be resolved by a jury after a trial).

In this case, Defendants contend that, if Plaintiff's claims are not dismissed on the merits, they must be dismissed because Defendants are entitled to qualified immunity. However, accepting Plaintiff's version of the events as true, Plaintiff was hit and punched numerous times with a closed fist on his back and on the side of his head while restrained on the ground, after he ceased to resist. Thus, Plaintiff has alleged conduct by the officers in violation of his Eighth Amendment rights that a reasonable officer would have known was a violation under the circumstances. No reasonable officer could agree that striking

14

and punching a subdued, non-resisting inmate in the side, with force enough to cause injuries — even minor bruising, was reasonable or necessary under established law. See Giles, 571 F.3d at 326; see also Hudson, 503 U.S. 1 (finding that use of excessive physical force against prisoner may constitute cruel and unusual punishment even though inmate does not suffer serious injury).

Moreover, although Defendants dispute these allegations, as set forth above, a genuine issue of material fact precludes summary judgment on the basis of qualified immunity. See Giles, 571 F.3d at 326.

Accordingly, Defendants are not entitled to summary judgment on the basis of qualified immunity.

B. FAILURE TO INTERVENE CLAIM

"[A] corrections officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so. Furthermore, ... a corrections officer cannot escape liability by relying upon his inferior or non-supervisory rank vis-a-vis the other officers." Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002) (citations omitted).

Here, Plaintiff contends that Officer Brown watched the beating from a control room and did not intervene; and that

Officers Blizzard and Castro stood eight to ten feet away and did not intervene.  Plaintiff does not assert, however, that any of these officers had a realistic and reasonable opportunity to intervene. Id.  As Defendants point out, the parties agree that the incident happened very quickly. (Defs.' SOMF, ¶ 32) (Pl.'s Resp. SOMF, ¶ 11).  Given the short time frame in which the incident occurred and the absence of factual allegations indicating that these officers had a realistic opportunity to intervene, no genuine issue as to any material fact regarding this claim exists and Plaintiff's claim fails.

The Court will grant summary judgment in favor of Defendants with respect to the failure to intervene claim.

C. INADEQUATE MEDICAL CARE CLAIM

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103–04 (1976).  In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. Id. at 106.

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have

unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" Hudson, 503 U.S. at 9.

Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize the necessity for doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss. See Johnson v. Stempler, 373 F. App'x 151, 153 n. 1 (3d Cir. 2010) (citing Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U .S. 1006 (1988)).

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need.  "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. Farmer, 511 U.S. at 837–38.  Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. Andrews v. Camden County, 95 F. Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F. Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984).  Similarly, "mere disagreements over medical

judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).

Rather, to establish deliberate indifference, a prisoner must show that the defendant was subjectively aware of the unmet serious medical need and failed to reasonably respond to that need. See Farmer, 511 U.S. at 837; Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003). Deliberate indifference may be found where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) intentionally delays necessary medical treatment based on a non-medical reason; or (3) deliberately prevents a prisoner from receiving needed medical treatment. See Pierce v. Pitkins, 520 F. App'x 64, 66 (3d Cir. 2013) (citing Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)).

In this case, Defendants acknowledge that Plaintiff had a wound to the head which was bleeding and, significantly, Defendants do not dispute the fact that his medical needs were serious. Instead, Defendants request summary judgment on the basis that there is no genuine issue of fact as to whether Defendant Haas acted with deliberate indifference to that serious medical need.[5]

---

[5] Plaintiff initially asserted claims for inadequate medical care against both Administrator Haas and Nurse Sacco-McCord.

With regard to deliberate indifference, Plaintiff's argument is two-fold.  First, Plaintiff asserts that he was in need of stitches to his head and that Defendant Haas refused to allow him to go to an outside hospital to receive this treatment. (Third Am. Compl. ¶ 28, ECF No. 24).  Next, Plaintiff asserts that Defendant Haas acted with deliberate indifference when he instructed his subordinates to stay away from Plaintiff until the following day. Id.

Both of these claims of liability against Defendant Haas are premised upon the assertion that Defendant Haas was aware of Plaintiff's need for medical treatment, and that he made the decision to deny Plaintiff this medical treatment.  Defendants respond that Plaintiff's claim is "incompetent," (Defs.' Reply at 9, ECF No. 59), and they argue that Plaintiff's claim must fail because Plaintiff did, admittedly, receive treatment for his wounds.  Presumably, then, Defendants contend that any alleged direction given by Defendant Haas is immaterial in light of the fact that Plaintiff ultimately received adequate medical treatment.

However, this is not the standard by which a claim for inadequate medical care is evaluated.  Rather, Third Circuit

---

However, the claims against Nurse Sacco-McCord were dismissed per the terms of a December 10, 2013 Stipulation of Dismissal (ECF No. 34).

case law dictates that a plaintiff sets forth a cognizable claim for inadequate medical care when he satisfies the two-prongs of Estelle; namely, that there exists (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. Estelle, 429 U.S. at 106.  Therefore, the fact that Plaintiff received medical treatment from another prison official, in defiance of Defendant Haas' alleged orders, does not eliminate the possibility that Defendant Haas may have acted with deliberate indifference.

The Court then looks to the evidence in the record to determine whether there exists a genuine issue of material fact as to Defendant Haas' conduct which precludes summary judgment. The only evidence submitted in support of Plaintiff's assertion that Defendant Haas acted with deliberate indifference is Plaintiff's own affidavit, submitted in response to Defendants' motion for summary judgment:

> Nurse McCord told Lt. Durham in my presence . . . that I needed stitches to my head and that I needed to go to an outside hospital because the prison doctor was not available at the prison.  Lt. Durham informed defendant Haas by telephone of this in my presence but Haas refused to allow me to be taken to an outside hospital.  Defendant Haas ordered that I be stripped of all of my clothing and that I be placed in a locked cell in the prison hospital in the nude and that no one was to go near me until I saw the prison internal affairs.

(Aff. In Opp'n ¶ 8, ECF No. 60-1).

These declarations, however, provide a different narrative than the one Plaintiff offered during his deposition, as discussed in detail below.  For the following reasons, the Court will disregard the portions of Plaintiff's affidavit which are inconsistent with his prior deposition testimony and summary judgment will be granted in favor of Defendants.

1. DEFENDANT HAAS' REFUSAL TO PERMIT PLAINTIFF TO GO TO AN OUTSIDE HOSPITAL TO RECEIVE STITCHES

As to Plaintiff's first claim — that Defendant Haas acted with deliberate indifference by refusing to allow Plaintiff to be taken to an outside hospital for stitches — there exists no genuine issue of material fact and summary judgment is appropriate.  Plaintiff concedes that Defendant Haas was not present at the time of his injury, and it is undisputed that Defendant Haas is non-medical prison staff.  Therefore, in order to succeed on his claim, Plaintiff must show that Defendant Haas knew of Plaintiff's serious medical need, and disregarded same. See Barkes v. First Corr. Med., Inc., 766 F.3d 307, 319 (3d Cir. 2014) abrogated on other grounds by Taylor v. Barkes, 135 S. Ct. 2042 (2015) (citations omitted) (finding that in order to succeed on his claim, a plaintiff must point to some evidence that a prison official knew of, and disregarded, the risk to the plaintiff's health and safety.); see also Davis v. Norwood, No. 14-4688, 2015 WL 3875785 (3d Cir. June 24, 2015) (finding that

non-medical prison official must have actual knowledge that prison medical staff are mistreating a prisoner) (<u>citing</u> <u>Spruill v. Gillis</u>, 372 F.3d 218 (3d Cir. 2004)).

The crux of Plaintiff's claim, then, is that he was in need of stitches and that Lt. Durham relayed this treatment recommendation to Defendant Haas who then refused treatment. However, the record does not clearly establish that Plaintiff was in need of stitches and the only evidence submitted in support of this assertion is Plaintiff's own affidavit, submitted in response to Defendants' motion for summary judgment. Beyond this affidavit, there is nothing to indicate that any medical professional made this treatment recommendation. Rather, it appears that Plaintiff, himself, believes that he should have received stitches and he is simply dissatisfied that he did not receive his desired treatment. As stated above, however, disagreements over medical judgment and subjective dissatisfaction with medical care do not state an Eighth Amendment claim. <u>See</u> <u>Andrews</u>, 95 F. Supp.2d at 228; <u>Peterson</u>, 551 F. Supp. at 145; <u>White</u>, 897 F.2d at 110.

Moreover, this assertion — that Plaintiff was told he was in need of stitches and that this treatment recommendation was relayed to Defendant Haas — is inconsistent with Plaintiff's prior deposition testimony. As an initial matter, nowhere in Plaintiff's deposition does he state that he heard Nurse Sacco-

McCord tell anyone that Plaintiff needed stitches.  At the most, Plaintiff states that Nurse Sacco-McCord "didn't bandage [him] up.  Because she know and I knew that I needed stitches." (Pl. Dep. 34:15-17, Defs.' Ex. B at 31).

Most significantly, later in the deposition when Plaintiff discusses the alleged telephone conversation between Lt. Durham and Defendant Haas, Plaintiff recalls prison officials reporting to Defendant Haas that Plaintiff was in stable condition. Specifically, Defendant states that prison officials said "[t]hat I'm okay." (Pl. Dep. 47:8 Ex. B at 34).  When questioned as to who said that he was okay, Plaintiff responded, "Durham. Lieutenant Durham.  Was saying — because Sacco-McCord was telling that — that they — she was inquiring about something to them about me being stable.  And I didn't have to go [to the hospital]." (Pl. Dep. 47:15-19 Ex. B at 34).

"A party may not create a material issue of fact by filing an affidavit disputing his or her own testimony without demonstrating a plausible explanation for the conflict." Baer v. Chase, 392 F.3d 609, 624 (3d Cir. 2004).  "[I]f it is clear that an affidavit is offered solely for the purpose of defeating summary judgment, it is proper for the trial judge to conclude that no reasonable jury could accord that affidavit evidentiary weight and that summary judgment is appropriate." Jiminez, 503 F.3d at 253.

Here, the affidavit offered by Plaintiff in an attempt to avoid summary judgment directly contradicts his deposition testimony on several crucial facts.  Most importantly, as discussed above, Plaintiff testified during the deposition that prison officials reported to Defendant Haas that he was in "okay," stable condition, and that he did not have to go to the hospital.  In his affidavit, however, Plaintiff asserts that Defendant Haas was told that Plaintiff needed to go to an outside hospital to receive stitches but that Defendant Haas refused to allow him to go.  This difference is crucial because it goes toward Defendant Haas' subjective state of mind, which is an essential element of the deliberate indifference inquiry.

Plaintiff does not provide any explanation for the inconsistencies between his affidavit and his prior testimony regarding what was told to Defendant Haas during the telephone conversation.  Therefore, it is clear to the Court that Plaintiff's affidavit is offered solely for the purpose of defeating summary judgment by creating a triable issue of fact as to Defendant Haas' knowledge.  Accordingly the Court will disregard the portions of the affidavit which contradict Plaintiff's previous deposition testimony. See Jiminez, 503 F.3d at 253-54 (holding that a district court may disregard this type of affidavit unless there is independent evidence to bolster the contradictory testimony); see also Martin, 965 F. Supp. 2d at

24

526; Penn Environment v. PPG Indus., Inc., 23 F. Supp. 3d 553, 583 (W.D. Pa. 2014) (holding that under the Third Circuit's flexible approach, a district court may disregard affidavits to the extent they are inconsistent with prior deposition testimony).

Without this affidavit, there is no evidence in the record to suggest that Defendant Haas knew of, let alone disregarded, Plaintiff's serious medical need, assuming one existed.  As discussed above, Plaintiff's own deposition testimony indicates that medical staff at the prison reported to Defendant Haas that Plaintiff was okay, in stable condition, and that he did not need to go to the hospital.  Accordingly, there exists no genuine issue of material fact as to whether Defendant Haas acted with deliberate indifference and Defendants are entitled to summary judgment on this claim.[6]

2. DEFENDANT HAAS ACTED WITH DELIBERATE INDIFFERENCE BY
   DIRECTING PRISON STAFF TO STAY AWAY FROM PLAINTIFF

---

[6] The Court notes that Plaintiff testified during the deposition that he "heard [Nurse Sacco-McCord] tell [Lt. Durham] that, Yeah, he needs to be taken to the hospital but the – that was it." (Dep. Testimony p 10, Lines 14-16, at 25, ECF No. 53-2). However, as discussed above, Plaintiff dismissed his claim as to Nurse Sacco-McCord and there is nothing in the record to indicate that this recommendation was ever relayed to Defendant Haas. Accordingly, even accepting this allegation as true, no genuine issue of fact exists and Plaintiff's claim against Defendant Haas does not survive summary judgment.

Likewise, summary judgment is appropriate with respect to
Plaintiff's second claim — that Defendant Haas acted with
deliberate indifference to his serious medical need by
instructing prison officials to stay away from Plaintiff.  As
discussed below, this assertion is speculative, at best, and is
not supported by the evidence in the record.

Plaintiff's affidavit asserts that Defendant Haas gave an
affirmative and specific order that Plaintiff prison staff was
to stay away from Plaintiff for the night which, construing
Plaintiff's submission liberally, amounts to an effective denial
of medical treatment.  However, Plaintiff's deposition testimony
reveals that this this assertion is based on pure speculation,
and the evidence in the record does not provide support for this
allegation.

First, Plaintiff's deposition testimony indicates that
Plaintiff merely assumed that Lt. Durham was speaking to
Defendant Haas during the telephone call at issue.  Specifically
Plaintiff admitted that he only "believe[d] him to be talking to
Superintendent Haas." (Pl. Dep. 48:5-6 Ex. B at 34).  When asked
what led Plaintiff to believe that Lt. Durham was talking to
Defendant Haas on the phone, Plaintiff responded, "Because I
heard them say they were talking to — I heard someone or Durham.
I can't remember — I just know that they were talking to
[Defendant Haas] on the phone." (Pl. Dep. 47:9-12 Ex. B at 34).

Plaintiff later stated, "I can't remember word-for-word what they said.  But I just know that I heard his name.  And why he was on the phone.  And I also know that's the procedure anyway." (Pl. Dep. 47:19-22 Ex. B at 34).

Likewise, it appears that Plaintiff's conclusion that Defendant Haas gave the specific orders mentioned in Plaintiff's affidavit is also speculation.  With regard to the substance of the alleged conversation with Defendant Haas, Plaintiff admitted that no one directly discussed the content of the conversation with him; nor did Plaintiff overhear anyone talking about the content of the conversation.  Furthermore, when directly asked whether anyone told Plaintiff about any directions given by Defendant Haas during that phone conversation, Plaintiff conceded that he did not.  Rather, Plaintiff stated "I read it in the report." (Pl. Dep. 49:6 Ex. B at 34).  However, Plaintiff was unable to identify the report to which he was referring during the deposition and he has not submitted any reports in conjunction with his opposition to Defendants' motion for summary judgment.

"Summary judgment cannot be avoided by resorting to speculation, or statements of personal opinion or mere belief; indeed, 'inference based on speculation or conjecture does not create a material factual dispute.'" Martin v. Unknown U.S. Marshals, 965 F. Supp. 2d 502, 527-28 (D.N.J. 2013) (citing

27

Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n. 12 (3d
Cir. 1990)); see also Blair v. Scott Specialty Gases, 283 F.3d
595, 608 (3d Cir. 2002) (party opposing summary judgment must
rely on facts, not "opinions or conclusions").  In this case,
there is no evidence apart from speculation that Defendant Haas
was on the phone with Lt. Durham, let alone that Defendant Haas
specifically ordered that Plaintiff be stripped of all his
clothing and locked in a cell while still bleeding from the
head; or that Defendant Haas forbade other prison staff from
going near Plaintiff.  These are mere opinions and speculative
conclusions and, as such, are insufficient to defeat summary
judgment. Blair, 283 F.3d 595.

Furthermore, the evidence in the record supports the
conclusion that Defendant Haas did not give an order to lock
Plaintiff in a hospital cell, while his head was still bleeding,
and deny him medical treatment throughout the night.  Defendants
submit Plaintiff's prison medical records in support of their
motion for summary judgment.  With respect to the incident at
issue, the medical records show that Nurse Sacco-McCord first
treated Plaintiff by cleaning and disinfecting his wounds, which
she described as "small" and "superficial." (Medical Chart,
Defs.' Ex. I, ECF No. 53-2 at 101).  Nurse Sacco-McCord also
reported that there was no active bleeding at 9:21 p.m. on
November 15, 2010, the night of the incident. Id.

During the early morning hours of November 16, 2010, only a few hours after the incident, Nurse Linda Bigay performed infirmary rounds and again cleaned Plaintiff's wounds and applied a saline compress. Id. at 95.  Her report, which was signed at 3:32 a.m., indicates that Plaintiff was "refusing to keep saline on – says he doesn't need it." Id. at 95, 97.  Later that morning, the prison doctor reviewed the case with the nurse and reported "[a]ll lacerations described as superficial by [nurse] and does not need sutures nor dermabond." Id. at 97.

Plaintiff's version of the facts, therefore, requires a jury to believe that at least three prison medical staff members conspired to misreport Plaintiff's injuries.  Furthermore, if a jury were to believe that Defendant Haas had, in fact, ordered medical personnel to deny treatment, then a jury would also have to believe that Nurse Bigay not only defied his orders, but also documented her insubordination by reporting her treatment efforts.

As the Supreme Court has explained, only genuine disputes of material fact preclude summary judgment, and the party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586–87, 106 S.Ct. 1348. Therefore, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no

reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." <u>Scott v. Harris</u>, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).  The evidence here only supports one version of facts – that Plaintiff had injuries which were treated sufficiently and periodically during his two day stay in the infirmary.  For these reasons, summary judgment is granted in favor of Defendants as to Plaintiff's inadequate medical care claim.

IV.  <u>CONCLUSION</u>

For the foregoing reasons, the Court will grant Defendants' request for summary judgment as to Plaintiff's failure to intervene claim and inadequate medical care claim.  Because a genuine issue of material fact exists with respect to Plaintiff's excessive force claim, Defendants' request for summary judgment as to that claim will be denied.

An appropriate Order follows.

_____s/ Noel L. Hillman_____
NOEL L. HILLMAN
United States District Judge

Dated: June 29, 2015
At Camden, New Jersey